J-A03021-15

2015 PA Super 127

| SHERI A. MORGAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DANIEL T. MORGAN | |
| Appellant | No. 1421 MDA 2014 |

Appeal from the Order dated July 21, 2014
In the Court of Common Pleas of the 39th Judicial District
Franklin County Branch
Civil Division at No: 2009-557

BEFORE:  MUNDY, STABILE, and FITZGERALD,[*] JJ.

OPINION BY STABILE, J.:                    **FILED MAY 28, 2015**

Appellant Daniel T. Morgan[1] ("Father") appeals from the July 21, 2014 order of the Court of Common Pleas of the 39th Judicial District, Franklin County Branch ("trial court"), which denied Father's motion to strike the trial court's child support enforcement orders dated November 5, 2013, December 4, 2013 and June 4, 2014.  Father moved to the strike the orders because he believed the trial court lacked subject matter jurisdiction to order child support in connection with C.M., his un-emancipated and severely

_____

[*] Former Justice specially assigned to the Superior Court.

[1] On September 24, 2014, we issued a *per curiam* order directing the parties' names be redacted in the caption to reflect only their initials to protect the confidentiality of minors.  This appeal, however, does not involve any minors.  Accordingly, we vacate the September 24, 2014 order.

autistic adult son with Sheri A. Morgan ("Mother"). Because we have resolved the central issue of subject matter jurisdiction in a prior appeal, we affirm the trial court's order and remand this matter to the court for calculation of counsel fees.

The facts and procedural history of this case are undisputed. As summarized by a prior panel of this Court:

> In 2003, the parties were divorced in Maryland. In conjunction with the divorce, the parties entered into a property settlement agreement ("PSA"), which provided, in relevant part, that Father would pay Mother alimony and child support. The PSA provided that Father's alimony obligation would remain fixed until July 1, 2007, after which either party could seek to modify the amount of the obligation. The PSA was incorporated into the divorce decree.
>
> On May 3, 2007, Father registered the Maryland divorce decree and PSA in Franklin County. Almost immediately thereafter he filed a petition seeking to reduce his alimony obligation. In response, Mother filed a petition seeking to increase Father's alimony obligation. These filings initiated approximately four years of proceedings regarding Father's alimony obligation, including an appeal to this Court, our remand to the trial court for further evidentiary proceedings, and then a subsequent appeal.
>
> In 2011, as the second appeal from the alimony proceedings was pending before this Court, Mother filed a support action because Father told her that he was going to cease paying child support for C.M. As part of the ensuing support proceedings, Father's employer submitted income information to the trial court that revealed that Father had been lying about his income and submitting falsified documents, including federal tax returns, to the trial court in connection with the alimony action.[2] It was later discovered that the tax

___

[2] We are deeply troubled by Father's representations about his income. The record before us suggests Father made statements under oath to conceal the extent of his income. Thus, it appears an investigation by proper authorities may be warranted into Father's conduct during the alimony and instant support proceedings. We, however, express no opinion on the merit or potential outcome of any investigation.

returns Father produced in the support action—after his deceit in connection with the alimony proceedings had been discovered—were also falsified. The discovery of Father's fraud on the court led to a protracted discovery period. As a result, the parties did not appear before the trial court for a hearing on Mother's support petition until July 2012, with a second day of hearings held in September 2012. The trial court subsequently entered an order setting Father's child support obligation and providing that it would apply retroactively to May 3, 2007 (the date Father registered the parties' divorce decree and PSA in Franklin County) and requiring Father to pay $128,526 of Mother's counsel fees. In making the support award, the trial court assigned Mother an income of $92,500 and rejected Mother's claim for an upward deviation of 25% beyond the amount prescribed by the Child Support Guidelines because of the minimal custodial time Father has with C.M. On July 11, 2013,[3] the trial court amended this order to provide, *inter alia,* that Mother's earning capacity should be applied retroactively to May 3, 2007. Father timely appealed and Mother timely filed her cross-appeal.

***Morgan v. Morgan***, 99 A.3d 554, 556 (Pa. Super. 2014) (footnotes omitted), ***appeals denied***, 825 MAL 2014, 826 MAL 2014 (Pa. filed April 2, 2015). In his appeal before the prior panel, Father filed a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, arguing that the trial court lacked subject matter jurisdiction to enforce the parties' PSA with respect to the child support obligation.[4] Father also argued that the trial court lacked

---

[3] The order was dated July 11, 2013, but was not filed until July 12, 2013.

[4] As the trial court observed in its 1925(a) opinion, "Father's [1925(b) s]tatement consist[ed] of thirty pages of text with no numbered paragraphs identifying specific issues. Rather, sentences throughout the thirty pages [were] in **bold** print that appear[ed] to be assertions of error but [were] duplicative. Trial Court 1925(a) Opinion, 9/23/13, at 2.

authority to modify child support, because the parties did not request modification.[5]

On September 5, 2013, while the parties' cross appeals were pending in this Court, Mother filed an "Omnibus Petition to Enforce the July 12, 2013 Order." Father responded to the petition. On November 5, 2013, the trial court issued an order, granting in part Mother's petition. Specifically, the trial court directed the Domestic Relations Division "to attach the wages of [Father] in an additional amount of two-thousand dollars ($2,000.00) per month effective the date of this [o]rder to satisfy the $128,525.81 of combined attorneys' fees award."[6] Trial Court Order, 11/5/13.

Because Father was subject to the July 12, 2013 support order, and because Father received a lump sum bonus of $138,329.04 from his employer, the trial court issued another order on December 4, 2013 directing the entire net bonus amount, after the required tax withholding, to be applied to Father's existing arrears. **See** Trial Court Order, 12/4/13. The

_____

[5] Father abandoned this argument in his appellate brief before the prior panel.

[6] The record reveals Father did not seek a supersedeas or a stay of the trial court's July 12, 2013 order that was on appeal before the prior panel of this Court and, therefore, the trial court retained authority to enforce the child support order. **See Cruse v. Cruse**, 737 A.2d 771, 773 (Pa. Super. 1999), **appeal denied**, 753 A.2d 818 (Pa. 2000); **see also Travitzky v. Travitzky**, 534 A.2d 1081, 1084 n.3 (Pa. Super. 1987) (holding that, absent a supersedeas, the trial court has inherent power to enforce its orders even after an appeal has been taken) (citation omitted).

trial court further directed that "[u]pon receipt of the lump sum, the Domestic Relations Division shall place said sum on hold for a period of thirty days pending further audit of the case." *Id.*

On December 16, 2013, Father filed a "Motion to Strike Orders Dated November 5, 2013 and December 4, 2013" ("First Motion"). In support of his motion, Father principally argued that the November 5, 2013 and December 4, 2013 orders attaching his income sought to enforce the July 12, 2013 child support order that was invalid, because the trial court lacked subject matter jurisdiction to modify child support obligations contained in the PSA. On December 20, 2013, the trial court dismissed the First Motion.

On March 3, 2014, the trial court issued an order with respect to the audit performed by the Domestic Relations Division. On March 18, 2014, both parties filed petitions to dispute the audit. Following a hearing, the trial court, on June 4, 2014, issued an order directing how Father's bonus would be disbursed.

On July 7, 2014, Father filed a "Motion to Strike the Orders Dated November 5, 2013, December 4, 2013 and June 4, 2014 Due to Lack of Subject Matter Jurisdiction" ("Second Motion"), raising essentially the same argument he raised in the First Motion. Simply put, Father argued the trial court lacked subject matter jurisdiction to issue the underlying July 12, 2013 order and, as a result, the related child support orders dated November 5, 2013, December 4, 2013 and June 4, 2014 had to be stricken as void.

On July 22, 2014, the trial court issued an order denying Father's Second Motion. In so denying, the trial court noted Father repeatedly asked the court not to enforce its July 12, 2013 child support order based on lack of subject matter jurisdiction. The trial court also noted that "[t]he ultimate issue of whether the [court] has subject matter jurisdiction to modify [Father's] child support obligation is currently on appeal before the Superior Court, and until the Superior Court has ruled on the matter, [the trial court] will continue to enforce [its] [o]rders in this case." Trial Court Order, 7/22/14. Because of "the obdurate and duplicative nature of [Father's] multiple [m]otions on the issue" of subject matter jurisdiction, the trial court directed Father to pay Mother $500.00 in attorneys' fees. **Id.** Father timely filed the instant appeal from the denial of the Second Motion.

Thereafter, on August 21, 2014, the prior panel of this Court issued its decision, addressing, *inter alia*, Father's argument on subject matter jurisdiction. Specifically, the prior panel addressed Father's argument that the trial court lacked subject matter jurisdiction to enforce the parties' PSA with respect to child support obligations, because the PSA was not merged into the divorce decree. In so doing, the prior panel concluded the trial court indeed had jurisdiction to modify Father's child support obligation despite the fact that the parties' PSA was not merged into their divorce decree. **Morgan**, 99 A.3d at 557. The prior panel reasoned "[t]he Divorce Code specifically provides that regardless of whether an agreement between parties is merged or incorporated into the divorce decree, '[a] provision of

- 6 -

an agreement regarding child support, visitation or custody shall be subject to modification by the court upon a showing of changed circumstances.'" *Id.* (citing 23 Pa.C.S.A. § 3105(b)). The prior panel further noted that parties to a divorce action "have no power . . . to bargain away the rights of their children." *Id.* (citation omitted). Accordingly, the prior panel of this Court rejected as meritless Father's jurisdictional challenge.[7]

The prior panel also observed that, as the appeal before it was pending, Father filed an Application for Remand, in which he presented the same argument regarding the trial court's jurisdiction and posited that because the trial court lacked jurisdiction to modify his support obligation, there was no valid order underlying his appeal. *Id.* at n.5 (record citation omitted). Because it concluded the trial court had jurisdiction over the matter, the panel denied Father's application in its August 21, 2014 decision. *Id.*

On September 8, 2014, Father filed his Rule 1925(b) statement in connection with the instant appeal, arguing that the trial court lacked subject matter jurisdiction to issue the July 12, 2013 order, because the parties did not request modification of child support. Father also argued that

---

[7] On November 13, 2014, Father filed a Petition for Allowance of Appeal in the Supreme Court presenting three questions for review, namely: whether a trial court (1) can modify a child support order that is nonexistent, (2) may modify a contract if no modification is requested, and (3) may modify a contract without prior notice and opportunity to be heard. As noted above, the Supreme Court denied Father's petition on April 2, 2015.

- 7 -

because no request for modification existed, his due process rights were violated.

On September 24, 2014, the trial court issued its Rule 1925(a) opinion, addressing the issue of subject matter jurisdiction raised in Father's Rule 1925(b) statement. In its Rule 1925(a) opinion, the trial court observed that the prior panel of this Court had resolved Father's argument that the trial court lacked subject matter jurisdiction. *See* Trial Court Opinion, 9/24/14, at 3. As a result, the trial court concluded that "the measures taken by [the trial court] to enforce the modification of the provision addressing Father's child support obligation also did not lack subject matter jurisdiction and were well within [the trial court's] power and authority." *Id.*

On appeal, Father raises three issues for our review, reproduced here verbatim:

> (1) Can a trial court modify a child support order that is nonexistent?
>
> (2) Can a trial court modify an agreement to pay child support if such agreement has been requested by no one?
>
> (3) Does modification of an agreement to pay child support require notice and an opportunity to be heard?

Father's Brief at 6-7.

Against this background, we are mindful that:

> [o]ur standard of review from the denial of a petition to strike a judgment is limited to whether the trial court manifestly abused its discretion or committed an error of law. A petition to strike a judgment will not be granted unless a fatal defect in the judgment appears on the fact of the record. Matters outside of

- 8 -

the record will not be considered, and if the record is self-sustaining, the judgment will not be stricken.

**Bell v. Kater**, 943 A.2d 293, 295 (Pa. Super. 2008) (citation omitted), **appeal denied**, 960 A.2d 454 (Pa. 2009).

Father first argues the trial court lacked subject matter jurisdiction to modify child support when the record contained no underlying child support order, but rather a PSA containing child support provisions. **See** Father's Brief at 20. As the trial court observed, and as we have recounted above, the prior panel of this Court resolved this precise issue in Father's previous appeal. Accordingly, the determination of the prior panel on the issue of subject matter jurisdiction controls the outcome here under the law of the case doctrine. **See Ario v. Reliance Ins. Co.**, 980 A.2d 588, 597 (Pa. 2009) (explaining that "a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter"). As we explained earlier, the prior panel of this Court specifically concluded the trial court had subject matter jurisdiction to modify the child support obligation regardless of whether the parties' PSA was merged into the divorce decree, because the parties had no power to bargain away C.M.'s rights.

We now turn to Father's second and third arguments, which we combine for ease of disposition and restate as follows. Father argues the trial court lacked the authority to modify child support because the parties here did not request modification and, as a result, his due process was violated. We, however, need not address this argument, because Father

waived it by failing to raise it before the trial court. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Although Father raised the issue for the first time in his Rule 1925(b) statement, we consistently have held that appellants may not raise issues for the first time in a Rule 1925(b) statement. **See Irwin Union Nat. Bank & Trust Co. v. Famous**, 4 A.3d 1099, 1104 (Pa. Super. 2010) ("It is well settled that issues not raised below cannot be advanced for the first time in a 1925(b) statement or on appeal."), **appeal denied**, 20 A.3d 1212 (Pa. 2011). Moreover, our review of the record indicates that Father sought to advance his second and third issues on this appeal, because he either failed to raise them—or abandoned them—in his previous appeal.[8]

Having disposed of his issues in this appeal, we cannot ignore Father's repeated abuse of our judicial system. Under the Rules of Appellate Procedure, we *sua sponte* may impose upon Father counsel fees.[9] **See Feingold v. Hendrzak**, 15 A.3d 937, 943 (Pa. Super. 2011) (explaining this

---

[8] Because Father waived his second and third issues, we need not decide whether Father should have raised them in his previous appeal challenging the July 12, 2013 order from which the enforcement orders at issue in this appeal derive. It is worth reiterating that Father abandoned his second issue in this appeal during his previous appeal.

[9] At argument, Mother's counsel requested this Court to impose upon Father counsel fees. In this regard, however, Mother's counsel failed to file any application for imposition of counsel fees. This oversight by Mother's counsel is not fatal, because this Court *sua sponte* may impose counsel fees.

Court *sua sponte* may "impose an award of reasonable counsel fees"). In fact, Pa.R.A.P. 2744, relating, *inter alia*, to counsel fees, provides:

> In addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just, including
>
> (1) a reasonable counsel fee and
>
> (2) damages for delay at the rate of 6% per annum in addition to legal interest,
>
> if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

Pa.R.A.P. 2744.

As we detailed above, Father's conduct leading up to this appeal has been nothing short of obdurate, obstreperous and vexatious. Father not only raised the jurisdictional issue simultaneously in different courts, but also repeated it in multiple motions in the same court. For instance, while Father's jurisdictional issue was pending before the prior panel of this Court, Father raised the same issue in his application for remand before the prior panel and at least twice (First Motion and Second Motion) before the trial court. When Father appealed the Second Motion, the prior panel of this Court had not yet rendered its decision addressing the jurisdictional issue. Put differently, when Father filed this appeal, he already had **another appeal pending** in this Court concerning the same issue, *i.e.*, lack of subject matter jurisdiction.

After the prior panel of this Court issued its decision addressing the jurisdictional issue, Father continued this appeal by filing a Rule 1925(b) statement raising once again before the trial court the resolved jurisdictional issue. Additionally, he filed a Petition for Allowance of Appeal in the Supreme Court to challenge the prior panel's decision, raising the same issues that are currently before us. Given the fact that the prior panel of this Court resolved Father's jurisdictional issue and our Supreme Court denied his ensuing appeal, we conclude the instant appeal is wholly frivolous. Accordingly, we deem it appropriate to award Mother counsel fees to deter Father from filing frivolous appeals in the future. We thus remand this matter to the trial court for calculation of reasonable counsel fees.

Order affirmed. Case remanded. Jurisdiction relinquished.

Judge Mundy joins the opinion.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/28/2015