J-S17023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GARY L. FOLMAR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| LINDA M. FOLMAR, | |
| Appellee | No. 1039 WDA 2015 |

Appeal from the Order June 8, 2015
In the Court of Common Pleas of Clearfield County
Civil Division at No(s): No. 2012-912-CD

BEFORE:  GANTMAN, P.J., SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED APRIL 21, 2016**

Gary L. Folmar ("Husband") appeals from the June 8, 2015 order granting Linda M. Folmar's ("Wife") petition for clarification of a Qualified Domestic Relations Order ("QDRO").[1]  Wife seeks to dismiss the appeal as untimely and also requests attorney's fees incident to litigating this appeal. For the reasons that follow, we deny Wife's motions to dismiss and for counsel fees, and we affirm the trial court's order.

_____

[*]  Former Justice specially assigned to the Superior Court.

[1]  "A QDRO . . . is a domestic relations order which creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a participant under the [pension] plan."  ***Morgante v. Morgante***, 119 A.3d 382, 395 n.11 (Pa. Super. 2015) (quoting ***Berrington v. Berrington***, 633 A.2d 589, 591 n.3 (Pa. 1993)).

The record reflects that Husband and Wife were married on November 19, 1977, and Husband filed for divorce on June 14, 2012. On June 27, 2014, Husband and Wife executed a marital settlement agreement which included a paragraph that the parties would equally divide the amounts paid into Husband's 401(k) retirement account provided by his employer, Your Building Centers ("YBC"). Marriage Settlement Agreement, 6/27/14, at unnumbered 5, ¶ D. The agreement specified that the parties agreed "to execute a [QDRO] evidencing the equal division of this asset, which QDRO will be approved by the Court and presented to Standard Insurance Company[2] upon completion." *Id*.

On July 2, 2014, the parties signed a Stipulation and Agreement that included the following paragraphs:

> 6. The parties hereto acknowledge that they are aware of the formula available that may be utilized in the calculation for the division of the 401(k) retirement plan of Participant; however, the Participant and Alternate Payee have agreed that they shall waive this formula of calculating the division and that **the retirement plan of Participant shall be divided in a fifty-fifty (50% to each party) per cent split for each party as of the date of signing this Stipulation and Agreement.**
>
> 7. **Participant's retirement benefit is defined as all monies paid to or on behalf of Participant** by [YBC], including any lump sum withdrawals and/or any increases **as of the date of separation of Participant and Alternate Payee, which date was May 25, 2012,** less any decrease or plus any

---

[2]  Standard Insurance Company administers Husband's 401(k) retirement account. Stipulation and Agreement, 7/2/14, at unnumbered 1, ¶ 1.

increase to the retirement plan on the separation date due to the economic conditions. Equitable distribution of the marital property component of Participant's retirement benefit, as set forth in Paragraph 6 shall commence as soon as administratively feasible after Participant's effective date of retirement, or the approval by YBC of a Domestic Relations Order incorporating this Stipulation and Agreement, whichever is later.

Stipulation and Agreement, 7/2/14, at unnumbered 2, ¶¶ 6, 7 (emphases added). On that same date, the trial court entered a final decree divorcing the parties and incorporating the Stipulation and Agreement and the QDRO. Divorce Decree, 7/2/14, at 1; QRDO, 7/2/14, at 1.

On December 16, 2014, Husband filed a Corrected Praecipe to Amend the QDRO. Therein, Husband averred that the:

[Husband's] Plan Administrator divided the benefits of the 401(k) retirement plan of [Husband] on a 50-50 basis, however, they used the date of the Agreement as stated in Paragraph 6 which was July 2, 2014 and not the separation date of May 25, 2012 in Paragraph 7, which was what the parties had discussed and what they agreed upon.

Corrected Praecipe to Amend QDRO, 12/16/14, at ¶ 6. Husband, alleging a "discrepancy in the dates as stated in the QDRO," requested the trial court to issue an order "directing that the scheme of distribution of the monies in [Husband's] 401(k) retirement plan through YBC be amended to reflect the parties' separation date of May 25, 2012, as was their express intent." *Id*. at ¶ 7, unnumbered 2. Wife filed an answer denying that the parties agreed that the valuation date of the 401(k) account was the date of the parties' separation on May 25, 2012. Answer to Petition, 12/23/14, at unnumbered 1. Wife further pled "[I]t is believed and therefore averred that the [QDRO]

in question has been established as a qualified order and is an existing order within the clear meaning of Paragraph 14 thereof, which relates to the Court's authority to amend it." *Id*.[3]

The trial court held a hearing on Husband's praecipe to amend on January 5, 2015. At the outset of the hearing, the trial court questioned whether it had the authority to amend the QDRO and then proceeded to entertain argument on Husband's petition. N.T., 1/5/15, at 2. Husband claimed that the 401(k) should be valued as of May 25, 2012, consistent with paragraph seven of the Stipulation and Agreement and, allegedly, in conformity with the intent of the parties. Wife argued that the trial court did

---

[3] Paragraphs fourteen and fifteen of the Stipulation and Agreement incorporated into the QDRO provide:

> 14. The Court of Common Pleas of Clearfield County, Pennsylvania, shall retain jurisdiction to amend any Domestic Relations Order based on this Stipulation and Agreement, but only for the purpose of establishing it or maintaining it as a Domestic Relations Order; provided, however, that no such amendment shall require YBC to provide any type or form of benefit, or any option not otherwise provided by YBC, and further provided that no such amendment or right of the Court to so amend will invalidate any existing Order.

> 15. Upon its entry as a Domestic Relations Order, a certified copy of this Stipulation and Agreement and any attendant document shall be served upon YBC immediately. The Domestic Relations Order shall take effect immediately upon its approval and the approval of any attendant document by YBC and shall remain in effect until further Order of Court.

Stipulation and Agreement, 7/2/14, at unnumbered 4.

not have authority to modify the QDRO. Alternatively, Wife asserted that the retirement account should be valued as of the date the parties signed the Stipulation and Agreement per paragraph six of that agreement. At the conclusion of the hearing, the trial court declared: "I'm going to review the statute to make sure—to see if I have the power to amend the QRDO and I'll render a decision. Okay. I understand the parties' respective positions." *Id*. at 13. On January 9, 2015, "following argument on [Husband's] Praecipe to Amend QDRO, the review of the statutes and case law, upon consideration of same" the trial court dismissed Husband's request to amend. Order, 1/9/15, at 1. Husband filed an appeal to this Court but subsequently withdrew it. *Folmar v. Folmar*, 164 WDA 2015, Notice of Discontinuance of Action, 4/13/15.

The complexion of the case was transformed on April 23, 2015, when Wife then filed a Petition for Clarification of the QDRO. Apparently precipitated by a communication from the YBC plan administrator seeking specification of the date of valuation of the 401(k) account,[4] Wife requested

_____

[4] We deem it prudent to reproduce the March 9, 2015 letter from the plan administrator in full:

Dear Parties:

As you may recall, you originally submitted a draft domestic relations order ("Draft Order") for our review in July 2012. Shortly thereafter, we notified each of you of how we would administer the Draft Order upon our receipt of a final version

*(Footnote Continued Next Page)*

entered by the court (the "Final Order"). Specifically, we noted we would assign to the alternate payee an amount equal to fifty percent of the participant's balance as of the date the parties sign the Final Order.

In summer 2014, we received a copy of the Final Order which, similar to the Draft Order, states:

> . . . the retirement plan of the participant shall be divided in a fifty-fifty (50 %) to each party per cent split for each party as of the date of signing this Stipulation and Agreement.

And consistent with both this provision in the Final Order and our previous explanation to the parties, we established an account for the alternate payee and assigned to her fifty percent of the balance as of the date the parties signed the Final Order (June 27, 2014).

However, the Final Order also introduced the potential for a different interpretation as to how it should be administered by referencing the date of the parties' separation (May 25, 2012). The Participant maintains this is the date as of which the Plan should determine the value of the balance to be divided, while the Alternate Payee believes such date is June 27, 2014. As you know, we asked both parties to stipulate and clarify this point, but we understand the parties cannot agree.

Therefore, we cannot currently administer the Final Order as a Qualified Domestic Relations Order ("QDRO"). The parties must submit an amended Final Order that provides a clear valuation date. To that effect, paragraph 14 of the Final Order states:

> The Court of Common Pleas of Clearfield County, Pennsylvania, shall retain jurisdiction to amend any Domestic Relations Order based on this Stipulation and Agreement, but only for the purpose of establishing it or maintaining it as a Domestic Relations Order . . .

As we wait for an amended order providing undisputed direction that permits us to administer an order as a QDRO, we have reversed the transaction establishing the Alternate Payee's account and restored the Participant's account balance. The

*(Footnote Continued Next Page)*

the trial court to enter an order reflecting the trial court's January 9, 2015 decision dismissing Husband's praecipe to amend the QDRO and effectively setting the date of valuation of the 401(k) account at July 2, 2014, when the parties executed the Stipulation and Agreement. After Husband filed an answer, the trial court held a hearing on May 28, 2015. At the hearing, Wife represented that the plan administrator notified the parties that it could not consider the trial court's January 9, 2015 Final Order as a QDRO until the trial court clarified the date of valuation of the 401(k) account. N.T., 5/28/15, at 3. Husband countered that because the trial court had previously decided it did not have the authority to amend the order, the remedy was remand of the matter for testimony before a master. *Id*. at 6–7.

On June 8, 2015, the trial court entered an order clarifying that the QDRO entered simultaneously therewith "shall reflect that the date of valuation [of the 401(k) account] shall be the date of execution of the QDRO." Order, 6/8/15, at unnumbered 1. Paragraph six of the June 8, 2015 QDRO filed simultaneously specified that the 401(k) account "shall be divided evenly, with each party to receive fifty percent (50%) of the balance

*(Footnote Continued)* ───────────

> Participant's account will remain frozen so as to prevent any loans or distributions and preserve the entire balance while this issue remains pending.

Answer to Petition for Clarification, 5/27/15, Exhibit B.

contained in the Plan as of July 2, 2014 [the date of execution of the Stipulation and Agreement]". QDRO, 6/8/15, at ¶6.

Husband filed an appeal to this Court on July 7, 2015. In response to the July 8, 2015 trial court order, Husband filed a Pa.R.A.P. 1925(b) statement raising eight issues. The trial court responded to the allegations of error, as follows:

> [Husband] filed for divorce from [Wife] on June 14, 2012. In July of 2014 the parties agreed to [split Husband's] 401(k) on a 50%-50% basis by a Stipulation and Agreement. On July 2, 2014 a Divorce Decree was entered incorporating the Stipulation and Agreement (QDRO). The QDRO contained two paragraphs which were inconsistent with each other with respect to the date when which the 401(k) was to be divided. *Compare* Stipulation and Agreement, ¶ 6 with Stipulation and Agreement, ¶ 7. [Husband] contends that the 401(k) was to be divided on the date of separation and [Wife] contends that it should have been divided on the date the both parties signed the Stipulation and Agreement. Consistently with paragraph 6, the Plan administrator divided the 401(k) as of July 2, 2014; the date [the] QDRO was signed by both parties.
>
> On November 26, 2014, [Husband] petitioned the Court to amend the QDRO. [Husband] argued that the 401(k) should be divided as of the June 2012, the date of separation, consistent with paragraph 7; whereas [Wife] argued that it should be valued and divided as of July 2, 2014, the date both parties signed the QDRO, consistent with paragraph 6 of the QDRO. A hearing was held on January 9, 2015 where the Court issued an Order ruling in [Wife's] favor.[1]
>
> ---
> [1] Though [Husband] appealed this January 9, 2015 Order, he subsequently petitioned to the Superior Court to have his appeal discontinued.
> ---
>
> The Court reasoned to divide the payment at the date of separation, but not distribute the 401(k) until the date the agreement was signed, would allow [Husband] to inequitably earn interest on [Wife's] agreed upon share. Accordingly, the

- 8 -

Court gave effect to the interpretation that would provide the most equitable outcome, namely, to value and distribute the 401(k) as of the date of signing the Stipulation and Agreement as provided for in paragraph 6. The conflicting paragraphs were amended on [Wife's] Petition to Amend the QDRO to reflect the Court's decision. *See* Amended QDRO.

Though [Husband] claims numerous errors on appeal; the present appeal is in essence simply an attempt to revisit the order of January 9, 2015. Accordingly, it is without merit. The time to appeal any issues relating to the January 9, 2015 Order has expired.

Trial Court Opinion, 8/14/15, at 1–2.

In response to the trial court's opinion, Husband has appended to his appellate brief a "Supplemental" 1925(b) statement raising additional issues. Husband's Brief at Appendix C. However, this statement, filed subsequent to the trial court's 1925(a) opinion, is not part of the certified record; nor is there any indication that the pleading was served on the trial court or Wife. Therefore, we will not consider the matters raised therein. ***See Rosselli v. Rosselli***, 750 A.2d 355, 359 (Pa. Super. 2000) (this Court may review and consider only items which have been duly certified in the record on appeal).

On August 27, 2015, Wife filed an application for relief under Pa.R.A.P. 123. Wife theorized that the issues raised in Husband's appeal relate back to the court's order entered on January 9, 2015, and requested this Court to dismiss the appeal as untimely.

Preliminarily, we deny the motion to dismiss the appeal. Facially, the appeal filed on July 7, 2015, was timely. Additionally, whether the issues

raised in Husband's Rule 1925(b) statement are cognizable on appeal

invokes a question of the merits, not the timeliness of the appeal.

Husband describes the issues on appeal, as follows:

A. Whether the lower court erred in applying the valuation of the retirement account as of the date of the execution of the QDRO and not the date of separation as agreed by the Husband and Wife?

B. Whether the lower court erred in assessing the parties' intent at the time of the negotiations and execution of the QDRO[?]

C. Whether the lower court abused its discretion in failing to allow testimony and evidence as to provisions of the settlement?

Husband's Brief at 5–6 (full capitalization omitted).

We review a trial court's decision to grant special relief in divorce

proceedings under an abuse of discretion standard:

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Lachat v. Hinchcliffe*, 769 A.2d 481, 487 (Pa. Super. 2001) (citation omitted). "An abuse of discretion exists when the trial court has rendered a decision or a judgment which is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will."

*Prol v. Prol*, 935 A.2d 547, 551 (Pa. Super. 2007) (citations omitted).

As Husband's issues two and three are intertwined and readily

resolved, we initially address these allegations of error. Husband contends,

somewhat inconsistently, that the trial court erred in refusing to accept

testimony and evidence concerning the intent of the parties and further erred when it determined that the parties intended that the 401(k) account was to be valued as of the date the agreement was signed.

While Husband accurately relates that the trial court did not take testimony at either the January 5, 2015, or May 28, 2015 hearing, Husband fails to mention that he was not precluded by the trial court from doing so. A review of the notes of testimony from the January 5, 2015 hearing reveals that Husband made no attempt to offer testimony or evidence. At the May 28, 2015 hearing, Husband's counsel offered that he was prepared to present testimony. When the trial court stated that that it would not hear testimony, counsel responded, "I can understand that" and proceeded to argue his position. N.T., 5/28/15, at 6. Having failed to lodge an objection when the trial court ruled to preclude testimony, indeed, having acquiesced in the court's ruling, Husband has failed to preserve this issue for appeal. *See McManamon v. Washko*, 906 A.2d 1259, 1274 (Pa. Super. 2006) (this Court will not consider a claim on appeal which was not called to the trial court's attention at a time when any error committed could have been corrected) (citation omitted).

Having concluded that the issue of testimony and evidence preclusion is either without merit (the January 5, 2015 hearing) or not reviewable (the May 28, 2015 hearing), it necessarily follows that we also reject Husband's contention that the trial court erred in assessing the parties' intent

concerning the valuation date of the 401(k) account. Simply stated, there was no record evidence of the parties' respective views for the trial court to evaluate. This issue is likewise meritless.

Husband's remaining argument is that the trial court improperly redrafted the QDRO when it concluded that the 401(k) account was to be valued as of the date the parties signed the Stipulation and Agreement. The bulk of Husband's argument again challenges the trial court's failure to take testimony and its assessment of the parties' intentions—claims we have already denied. To the extent that Husband protests that the court's decision to set the valuation date as of the signing of the Stipulation and Agreement resulted in an inequitable distribution of the assets, we discern no error in the trial court's rationale in this regard. As noted, the trial court reasoned that valuing the 401(k) account on the date of separation would disproportionately permit Husband to earn interest on Wife's share and that "the most equitable outcome" was to appraise the account "as of the date of signing the Stipulation and Agreement as provided for in paragraph 6." Trial Court Opinion, 8/14/15, at 2. The trial court's conclusion was not unreasonable, arbitrary, or capricious; nor did the trial court err in its application of the law. Accordingly, Husband is unable to demonstrate that the trial court abused its discretion in interpreting the conflicting paragraphs of the Stipulation and Agreement.

Although not enumerated as a separate issue, we nonetheless address Husband's position that while the trial court had earlier ruled it did not have authority to modify the QDRO, seven months later it modified the order upon Wife's request. This argument fails for two reasons. First, although the court questioned its authority to modify a QDRO at the January 5, 2015 hearing, the January 9, 2015 order specifically stated that Husband's praecipe to amend the QDRO was dismissed after "review of the statutes and case law." Order, 1/9/15, at unnumbered 1. Additionally, in its 1925(a) opinion, the trial court explained that its decision on the appropriate valuation date was in consideration of the equities of the distribution of assets. Clearly, the trial court resolved this dispute on the merits.

The second reason to discount Husband's argument is that, according to the terms of the Stipulation and Agreement, **see** n.3, *supra*, the trial court arguably had jurisdiction to modify the QDRO. Paragraph fourteen of the agreement permits the trial court to "retain jurisdiction to amend a [QDRO] . . . for the purpose of establishing it or maintaining it. . . ." Stipulation and Agreement, 7/2/14, at ¶ 14. The trial court, however, does not have the authority to "invalidate an existing [QDRO]." **Id**. Here, the trial court clarified the terms of the QDRO in response to the communication from the plan administrator that it could not administer the court's January 9, 2015 order as a QDRO until the parties submitted an amended final order providing a clear valuation date. Having arrived at this

administrative stalemate, the trial court was the only entity in a position to make clear the terms of the agreement. Such a clarification was within its authority to maintain the QDRO and did not constitute an improper invalidation of same.[5]

Finally, we address Wife's request for attorney's fees and costs pursuant to 42 Pa.C.S. § 2503(9). This Court *sua sponte* may impose counsel fees. **Morgan v. Morgan**, 117 A.3d 757, 758-763 (Pa. Super. 2015). Section 2503(9) provides for an award of counsel fees if "the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious, or in bad faith." 42 Pa.C.S. § 2503(9). We do not agree that Husband's conduct in pursuing this appeal warrants the award of attorney's fees.

Motion to dismiss denied. Order of June 8, 2015 affirmed. Motion for attorney's fees denied. Jurisdiction relinquished.

---

[5] We note further that the March 9, 2015 letter from the plan administrator indicates that the original July 2, 2014 QDRO was never finally accepted by the plan administrator. **See** n.4, *supra*. Thus, it is arguable that the trial court's June 8, 2015 order clarifying its January 9, 2015 order actually established the QDRO.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/21/2016