J-A22018-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M. E. K., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| J. E. K., | : | |
| | : | |
| Appellee | : | No. 222 EDA 2019 |

Appeal from the Order Entered December 20, 2018
in the Court of Common Pleas of Delaware County
Domestic Relations at No(s): 2015-00837
PACSES # 998115266

BEFORE:  MURRAY, J., STRASSBURGER, J.* and PELLEGRINI, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED NOVEMBER 13, 2019**

M.E.K. (Mother) appeals from the order entered on December 20, 2018, which decreased the monthly child support obligation to Mother after J.E.K. (Father) filed a petition for modification of support.[1]  Upon review, we affirm.

Mother and Father were married in August 1997, and separated in February 2013.  They are the parents of three children (Children), born in May 2001, November 2002, and April 2005.  Mother has maintained primary physical custody of Children.  On November 6, 2015, the trial court entered an agreed to support order.  It awarded Mother $4,346.43 per month in child

---

[1] By order filed March 8, 2019, this Court quashed Mother's appeal with respect to the portion of the December 20, 2018 order regarding *alimony pendente lite* (APL).  **See** Order, 3/8/2019.

---

* Retired Senior Judge assigned to the Superior Court.

support.[2]   On March 31, 2016, Father filed a petition for modification of support, seeking a reduction in support.[3]   After a hearing, on June 27, 2016, a support master recommended decreasing the child support to $1,300 per month, plus $130 per month in arrears.

Mother then filed a demand for a *de novo* hearing before the trial court. The trial court held hearings on December 5, 2016, December 20, 2016, and January 20, 2017.   The trial court entered an order on May 2, 2017, which imputed an annual earning capacity of $240,704.33 to Father[4] and $60,143 to Mother,[5] and ordered Father to pay Mother $1,981.38 per month in child

---

[2] The order also awarded Mother $7,653.57 per month in APL.

[3] Father was employed from 2007 to 2014 with the Glen Beck Organization. In 2013 and 2014, he earned more than $500,000 per year.   He was terminated for cause in November 2014, and received a severance package that included payment of $750,000 over 18 months ($30,000 per month), which ended in May 2016.   Accordingly, Father sought to decrease his support obligation.

[4] Father has a law degree and a master's degree in public policy.   Based on Mother's expert report, the trial court derived Father's imputed earning capacity from "an average of the salary for persons in the 50th percentile for heads of nonprofits ($286,250), chief of staff ($195,863)[,] and personal injury lawyer." Order, 5/2/2017, at ¶ 24 (unnecessary capitalization omitted).

[5] Mother has a law degree, but has not worked outside of the home for many years.   Based on Father's expert report, the trial court derived Mother's imputed earning capacity from "an average of the salaries reflected in [Father's] expert report … for the most appropriate positions for [Mother] of lawyer, claims adjuster[,] and paralegal."  Order, 5/2/2017, at ¶ 36.

support.[6]

On October 6, 2017, Father filed a petition for modification of support, where he requested a decrease in his support obligation due to a material change in his income. The trial court dismissed his petition on January 22, 2018, when Father failed to appear at a scheduled hearing.[7, 8] Father filed a motion for reconsideration the next day, which the trial court denied on February 16, 2018.

Meanwhile, on February 2, 2018, while his motion for reconsideration was pending, Father filed a subsequent petition for modification of support, which similarly sought a decrease in his support obligation. Following a hearing, the petition was dismissed by a support master on March 19, 2018, because "no documentation [was] produced" by Father. Order, 3/29/2018, at 2. Father then filed a demand for a *de novo* hearing before the trial court.

_____

[6] The child support award was reduced from $2,466.06 per month based upon Father's payment of $2,100 per month for health insurance for himself, Mother, and Children. Father was also ordered to pay Mother $2,198.51 per month in APL and $459.78 per month on arrears. On May 15, 2017, the trial court amended its May 2, 2017 order to reduce the monthly arrearage payment to $418.

[7] According to Father, he failed to appear "due to an inadvertent scheduling error." Father's Brief at 10.

[8] In the meantime, on December 29, 2017, Father filed a notice of appeal in this Court, docketed at number 275 EDA 2018, from a trial court order dated November 29, 2017, which denied Father's objection to a Financial Institution Data Match (FIDM) freeze of his bank account relating to a dispute over the arrears balance. By *per curiam* order, this Court remanded that appeal and relinquished jurisdiction on May 3, 2018. Order, 5/3/2018.

Following continuance requests by both parties, the trial court held a hearing on December 4, 2018.

At the hearing, Father and Mother testified. According to Father, from May to August 2017, he sought employment in the greater Philadelphia area at the earning capacity of $240,704.33 that had been imputed to him by the trial court in May 2017. N.T., 12/4/2018, at 29-31, 34, Exh. D-1. Father testified that he was unsuccessful in his attempts, having applied to nearly 100 job openings, including positions as an attorney, director of development, vice president of operations, and executive director. *Id.* However, Father received only three interviews and zero offers. *Id.* According to Father, his hiatus from the practice of law for many years while he performed non-legal work at the Glen Beck Organization was a factor in his not receiving any offers. *Id.* Moreover, Father testified that he had been alienated from his Mormon church congregation due to his extramarital affairs, and could no longer use it as a source of legal referrals as he had done when he was in private practice. *Id.* at 43-44. Father also testified that from May to August 2017, he networked with about a dozen attorneys he knew from his days in private practice, but that effort did not result in any job offers. *Id.* at 31.

In the meantime, Father had started a social media marketing company, Little Cloud Media, of which he is founder and president. *Id.* at 34-35. In August 2017, the National Federal Lands Conference, a non-profit organization based in Utah, offered Little Cloud Media a contract that provided $20,000 in

monthly revenue, from which Father could draw an annual salary of $109,000. *Id.* at 29, 35, 44, 114. Father stated that his annual salary is set by Little Cloud Media's board of directors. *Id.* at 35, 115. According to Father, a condition of the contract was his relocation from Glen Mills, Pennsylvania to Ogden, Utah. *Id.* at 29-30. Father testified that he had no desire to move to Utah, but accepted the offer as a "lifeline" because it was the only offer he received and he was going into debt with his support obligation. *Id.* at 29-30, 40. Father relocated to Utah in August and September 2017. *Id.* at 29. Father also stated that once in Utah, he started a law practice, Peace Legal, but it did not generate enough revenue for him to draw a salary. *Id.* at 34. Father presented documentary evidence of his gross earnings for the first 10 months of 2018 of $111,916.74, as well as his 2017 tax return. *Id.* at Exh. D-2, D-11.

Mother also testified at the hearing. She stated that she is not employed outside the home and does not earn any income. *Id.* at 133. According to Mother, she stopped working outside of the home to care for Children when Father started his position with the Glen Beck Organization, because Father often worked and traveled out of state for long periods of time. *Id.* at 135. Mother stated that during Father's years working with the Glen Beck Organization, he was home an average of one weekend per month. *Id.* at 138-39. Mother testified that she did not return to work as Children got older because they are accustomed to her being the parent who is available and

responsible for Children's obligations such as school, homework, activities, field trips, dinner, etc., as well as her being a "steadying force" for Children through the parties' divorce. *Id.* at 136-38.

On December 20, 2018, the trial court entered the order at issue here, which decreased Father's child support obligation. Specifically, the trial court determined Father's monthly net income to be $7,834.17, and Mother's monthly net income to be zero. Accordingly, the court reduced Father's child support obligation to $2,039 per month.[9] Mother filed a timely appeal from that order, and both Mother and the trial court complied with Pa.R.A.P. 1925.

In summary, the parties have been involved in protracted litigation over the amount of Father's child support, APL, and arrearage obligation to Mother, precipitated by Father's termination from his job in November 2014, at which he was earning over $500,000 annually. Since Father received a generous severance package when his employment was terminated, the parties came to an agreement of the amount of Father's support obligation. It did not become an issue until May 2016, when the severance payments ended. At that time, Father sought to decrease his support obligation, as Father had not secured employment at a similar level of income. The record is replete with filings by the parties over the years, but at its core, Father's support obligations have been decreased twice by the trial court, once in May 2017

---

[9] The trial court further ordered Father to pay $1,738.55 per month in APL, for a total monthly support obligation of $3,777.55, plus $377.76 on arrears.

and again in December 2018.  The December 2018 child support order is the subject of this appeal.

Mother lists six, albeit overlapping, issues in the statement of questions presented section of her brief.  The crux of Mother's issues is her contention that the trial court should have dismissed Father's petition to modify support because Father failed to establish a material and substantial change in circumstances, and that the trial court should have imputed the earning capacity of a licensed practicing attorney for Father because Father failed to establish his income or earning capacity.  ***Id.*** at 1-2.

We set forth our well-settled standard of review and applicable principles of law with respect to a support order.

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground.  We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order.  An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.  In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

***Silver v. Pinskey***, 981 A.2d 284, 291 (Pa. Super. 2009) (citation and quotation marks omitted).

"An award of support, once in effect, may be modified *via* petition at any time, provided that the petitioning party demonstrates a material and substantial change in [his or her] circumstances warranting a modification."

***Plunkard v. McConnell***, 962 A.2d 1227, 1229 (Pa. Super. 2008), *citing* 23
Pa.C.S. §4352(a) ("A petition for modification of a support order may be filed
at any time and shall be granted if the requesting party demonstrates a
substantial change in circumstances.") and Pa.R.C.P. 1910.19. Rule 1910.19
provides as follows.

> Pursuant to a petition for modification, the trier-of-fact may modify or terminate the existing support order in any appropriate manner based on the evidence presented without regard to which party filed the petition for modification. If the trier-of-fact finds that there has been a material and substantial change in circumstances, the order may be increased or decreased based on the parties' respective monthly net incomes, consistent with the support guidelines, existing law, and Pa.R.C.P. No. 1910.18(d), and the party's custodial time with the child at the time the modification petition is heard.

Pa.R.C.P. 1910.19(c). "The burden of demonstrating a material and
substantial change rests with the moving party, and the determination of
whether such change has occurred in the circumstances of the moving party
rests within the trial court's discretion." ***Plunkard***, 962 A.2d at 1229
(citations and internal quotation marks omitted).

Mother first complains that the trial court should have dismissed Father's
petition for modification because it failed to aver specifically a material and
substantial change in circumstances. **See** Mother's Brief at 15. We find this
issue waived as Mother failed to raise it in the court below. **See** Pa.R.A.P.
302(a) ("Issues not raised in the lower court are waived and cannot be raised
for the first time on appeal."). Although Mother raised the issue in her Rule
1925(b) statement, "we consistently have held that appellants may not raise

issues for the first time in a Rule 1925(b) statement." ***Morgan v. Morgan***, 117 A.3d 757, 762 (Pa. Super. 2015) (citation omitted).

Even if Mother had not waived this claim, it would fail nonetheless. ***Summers v. Summers***, 35 A.3d 786, 789 (Pa. Super. 2012) (holding that trial court's acceptance of father's petition to modify child support, even though petition failed to comply with Pa.R.C.P. 1910 by specifying the material and substantial change upon which the petition was based, did not prejudice mother or violate her due process rights). Here, Father's reason for seeking modification (his move to Utah and change in employment) was known to the parties, at a minimum, at the March 19, 2018 conference before the support master, which was held more than eight months prior to the December 4, 2018 *de novo* hearing before the trial court. ***See id.*** As in ***Summers***, "Mother had notice of the basis of Father's claims prior to the *de novo* hearing, [and] thus the faulty petition[10] for modification did not prejudice Mother." ***Id.***

Next, Mother contends that not enough time had elapsed when Father filed the petition for modification at issue here. ***See*** Mother's Brief at 17-18.

---

[10] Father's petition for modification is a standard form, signed by Father, and filed with the Delaware County Domestic Relations Section. Father's petition did not set forth any material or substantial change in circumstances upon which the petition was based. Instead, Father merely checked the circle to decrease his support obligation in paragraph two, and in the space provided for a petitioner to describe any change in circumstances he or she alleges form the basis of a petition, Father baldly stated "material change in circumstances." Petition for Modification, 2/2/2018, at 2. ***See Summer***, 35 A.3d at 789 n.2.

Mother argues that Father was required to prove a material and substantial change in the eleven days between the trial court's dismissal of Father's petition on January 22, 2018 due to his failure to appear, and Father's subsequent petition for modification filed on February 2, 2018. *Id.* at 18. Such claim fails because, as noted *supra*, "[a] petition for modification of a support order may be filed **at any time**...." 23 Pa.C.S. § 4352(a) (emphasis added); *see also Plunkard*, *supra*. Moreover, during the time period Mother contests, the most recent support order was the May 2017 support order and Father was still subject to the support obligation therein. *See Samii v. Samii*, 872 A.2d 856, 863 (Pa. Super. 2005) (rejecting mother's claim that a material change in circumstances should be measured from a 1999 support order, instead of a 2002 support order, and holding "the most recent order is the one that is pertinent to the determination of whether a change in circumstances has occurred."). Accordingly, at the December 4, 2018 *de novo* hearing, Father was required to prove a material and substantial change since the entry of the May 2017 order. As discussed *infra*, Father met that burden.

In her third issue, Mother complains that Father's evidence at the December 4, 2018 *de novo* hearing was insufficient to meet his burden of proving a material and substantial change in circumstances. Mother's Brief at 19-23. The trial court offered the following analysis.

> Father attempted to obtain a career at an earning capacity of $240,704.33 that was imputed to him by [the trial court] in May [] 2017. At the time of the hearing before [the trial court in December 2018], however, Father testified that he had applied to

approximately 100 legal jobs in the Philadelphia and Delaware County market[s] from May 2017 to August 2017. Father explained that before his job with the Beck Organization, he practiced law in New Jersey in the [19]90[]s. Father reached out to old colleagues from that time to inquire about job opportunities but was unsuccessful. Out of his 94 job applications, only three applications resulted in "call backs" from prospective employers. Father testified that he did not receive any job offers from these prospective employers. In August [] 2017, Father accepted a contract position with the National Federal Lands Conference and relocated to Utah. While Father had no desire to relocate to Utah, this was the only job offer that he received during this time period. As a result, he accepted the position. Father explained that the position in Utah involves work at both a social media branding company called Little Cloud Media as well as at a law firm called Peace Legal. He testified that his yearly salary for 2018 was $109,000 gross.

Father provided a copy of a payroll statement from October 16, 2018 through October 31, 2018[,] which showed a gross income for the 10 month period of 2018 of $111,916.74 and an earnings statement from November 2, 2018 through November 15, 2018.

***

[T]he testimony before [the trial] court revealed that following [the May 2017 support order], Father applied to almost 100 jobs. Ultimately he was offered one position[,] one which he accepted. [The trial] court found that Father's salary at this new position was significantly lower than he had been making with the Beck Organization and was significantly lower than the earning capacity that had been imputed to him by [the trial court] a year earlier [in May 2017]. Accordingly, [the trial] court, in applying the formula set forth in Pa.R.C.P. 1910.16-4(a), first determined the parties' respective net monthly incomes. Father's payroll statement showed a gross monthly income of $11,191.67. After taxes, [the trial] court found that his net monthly income was $7,834.17. [The trial] court found that Mother, who has been unemployed for almost 20 years, has a zero monthly net income.

Based upon the evidence presented, [the trial] court determined that, pursuant to the Child Support Guidelines set forth in the Pennsylvania Rules of Civil Procedure 1910.16-3, and

based upon the parties['] respective incomes listed above, the monthly support obligation to be paid by Father to Mother for three children is $2,039.00.

Trial Court Opinion, 4/16/2019, at 5-7 (party designations altered; citations to the record omitted).

Our review of the record confirms that Father presented evidence at the December 4, 2018 hearing that he secured new employment in a different state and job market, at which his annual salary is lower than the salary that had been imputed to him in Philadelphia and Delaware counties in May 2017. The record supports the trial court's finding that Father's situation had materially and substantially changed in the 1½ years between hearings. In May 2017, Father was imputed an earning capacity of $240,704.33 in the Philadelphia and Delaware County markets, but at the time of the December 4, 2018 hearing, Father had relocated to Utah and was earning an annual income of $134,300.[11] This reduction of more than $100,000 annual income is undoubtedly a substantial change in Father's circumstances. Likewise, the record supports the trial court's finding that Father was unable to find employment as an attorney at the salary level that had been imputed to him as an attorney working in the Philadelphia area. Father had applied to nearly 100 jobs, had received three "call backs" for positions as an attorney, none of which resulted in a job offer, and took a "lifeline" when he moved to Utah and

_____

[11] This figure is derived from the trial court's finding that Father's gross monthly income was $11,191.67. Order, 12/20/2018, at ¶ 18.

accepted a job there. Because the support order is supported by the record and we discern no abuse of discretion, we will not interfere with the broad discretion afforded the trial court. **See Silver**, **supra**. Accordingly, we uphold the trial court's exercise of its discretion to decrease Father's child support obligation.

We address Mother's final three claims together for ease of disposition, as they all relate to her contention that the trial court should have imputed the earning capacity of a licensed practicing attorney for Father because Father failed to establish his income or earning capacity. Mother's Brief at 23-30. Mother claims Father provided insufficient evidence to prove his income, and as a result, the trial court should have imputed an earning capacity to Father rather than rely upon his actual earnings. **Id.** Mother argues that because Father was fired for cause in November 2014, the trial court should have held Father to an "earning capacity within the range of income he made at the time of firing for cause." **Id.** at 24.

As this Court has explained,

[u]nder Rule 1910.16–2(d)(1)[12], if a party voluntarily accepts a lower paying job, there generally will be no effect on the support

_____

[12] Pa.R.C.P. 1910.16-2 provides as follows.

(d) Reduced or Fluctuating Income.

> (1)   *Voluntary Reduction of Income.* When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education,

- 13 -

obligation. A party may not voluntarily reduce his or her income in an attempt to circumvent his support obligation. Where a parent is fired for cause, however, the court can consider reducing the parent's child support obligation under Rule 1910.16(2)(d)(1) if the parent establishes that he or she attempted to mitigate lost income.

***Grigoruk v. Grigoruk***, 912 A.2d 311, 313 (Pa. Super. 2006) (citations omitted). "Generally, the support amount awarded is based on the parties' monthly net income." Pa.R.C.P. 1910.16-2. However, "[i]f the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity." Pa.R.C.P. 1910-16(d)(4).

In ***Grigoruk***, we affirmed an order which decreased a mother's child support obligation where the mother had been fired for cause and attempted to mitigate her lost income. 912 A.2d at 314. There, the mother was fired for willful misconduct from her position as the chief executive officer of a non-profit organization, where she earned about $90,000 annually. ***Id.*** at 312. She had previously been employed in higher level administrative and executive positions, primarily in the education field, earning as much as $101,400 per year. ***Id.*** The mother also held several higher education degrees, including a doctorate in education. ***Id.*** After her termination, the mother conducted a six-month job search during which she applied for ten

---

or is fired for cause, there generally will be no effect on the support obligation.

Pa.R.C.P. 1910.16-2(d)(1).

- 14 -

positions. *Id.* The mother focused on college professorships and education positions within school districts, including principal positions. The mother accepted her only job offer, that of a reading specialist earning $52,000 annually. *Id.* In scrutinizing the mother's efforts to mitigate her decreased earnings, this Court found no abuse of discretion in the lower court's finding that the mother "undertook a sufficient job search and applied for a variety of positions, including those offering compensation at a rate equal to her prior earnings. She accepted the only offer of employment she received." *Id.* We noted that the lower court properly considered the mother's "relevant employment history, academic credentials, and credited [the m]other's attempts to find commensurate employment when assessing her earning capacity," and mother's "rational decision to accept a position at a reduced salary rather than continue a job search with no salary." *Id.*

Instantly, it is undisputed Father was fired for cause in November 2014. There is no indication in the record, and Mother does not argue, that Father's termination was an attempt to circumvent his support obligation. Rather, the record indicates Father's firing was related to his extramarital affairs, Father continued to pay his support obligations while unemployed, and he went into debt to do so. N.T., 12/4/2018, at 29-30, 40, 82-83. Thus, Father's job loss was not a result of Father's effort to avoid his support obligation. *See Grigoruk*, 912 A.2d at 313.

We now examine Father's efforts to mitigate his decreased earnings. Mother argues that Father must be imputed an earning capacity corresponding to Father's prior employment because he did not attempt to mitigate his loss of income. Mother's Brief at 25-28.[13] Mother claims that Father engaged in a brief, negligible job search and improperly focused his efforts on Little Cloud Media; thus, she contends Father's income should not be that of the position he accepted in Utah, but rather, should be a salary comparable to that of a licensed, practicing attorney in the greater Philadelphia area. *Id.* at 26-30.

The trial court offered the following analysis of Mother's claims.

> [The trial] court did not find that Father willfully failed to obtain appropriate employment. Instead, [the trial] court found that Father was **unable** to earn as much as he previously earned at [the] Glen Beck [Organization] or at the earning capacity that was imputed to him by [the trial court in May 2017] in the current job market. Father credibly testified that he made a good faith effort to find appropriate employment in the [greater Philadelphia] region, at an appropriate salary level, and for an individual with his qualifications. However, despite his efforts, he was unsuccessful. Accordingly, [the trial] court found that Father had shown a material change in circumstances, modified the support

---

[13] We point out that one of the cases upon which Mother relies on page 27 of her brief is an unpublished non-precedential memorandum decision which may not be cited because it was filed before May 2, 2019. Superior Court Internal Operating Procedure § 37, 210 Pa.Code § 65.37 ("An unpublished memorandum decision filed prior to May 2, 2019, shall not be relied upon or cited by a Court or a party in any other action or proceeding, except that such a memorandum decision may be relied upon or cited (1) when it is relevant under the doctrine of law of the case, res judicata, or collateral estoppel, and (2) when the memorandum is relevant to a criminal action or proceeding because it recites issues raised and reasons for a decision affecting the same defendant in a prior action or proceeding."); *see also* Pa.R.A.P. 126(a) (unpublished non-precedential memorandum decisions of the Superior Court filed after May 1 2019, may be cited for their persuasive value).

order, and calculated actual earnings based upon Father's new position.

Trial Court Opinion, 4/16/2019, at 8 (emphasis in original; party designation altered). "[T]he trial court, as the finder of fact, is entitled to weigh the evidence and assess the credibility of witnesses." *Krankowski v. O'Neil*, 928 A.2d 284, 287 (Pa. Super. 2007). As discussed *supra*, the trial court found Father undertook a sufficient job search, applied to a variety of positions, including those offering compensation at a rate comparable to the $240,704.33 earning capacity that had been imputed by the trial court in May 2017, and accepted the only offer of employment he received. *See Grigoruk*, 912 A.2d at 314. The trial court took into account Father's relevant work history and law degree, and it credited Father's attempts to find commensurate employment and his decision to accept employment at a reduced salary rather than continue a job search with no salary. *See id.* We discern no abuse of discretion in the trial court's finding that Father did not willfully fail to obtain or maintain appropriate employment, its failure to impute an earning capacity to Father, or its determination of Father's income relating to his employment in Utah, which was based upon testimonial and documentary evidence presented at the December 2018 hearing.

Based on the foregoing, and after reviewing the evidence of record, we discern no abuse of discretion in the trial court's rationale and calculation of Father's income and support obligation. Accordingly, we decline to disturb the

order entered on December 20, 2018, which decreased Father's monthly child support obligation to Mother.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/19