J-S12017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| K.F.P. OBO MINOR V.I.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.M.P. | : | No. 2334 EDA 2020 |

Appeal from the Order Entered November 5, 2020
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): No. 2020-06408

BEFORE:  LAZARUS, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS:                                    **FILED JUNE 1, 2021**

K.F.P. (Wife) appeals *pro se* from the order which granted J.M.P.'s (Husband) petition for special relief to enforce the settlement agreement and vacated the temporary protection order previously entered pursuant to the Protection From Abuse (PFA) Act[1].  We affirm.

The trial court, with the Honorable Daniel J. Clifford presiding, set forth the factual and procedural history in this matter in his opinion.  *See* Trial Ct. Op., 1/26/21, at 1-5.  Relevant to this appeal, Wife filed a PFA petition against Husband on May 26, 2020, on behalf of herself and the parties' son, V.I.P., born in December of 2019.  The Honorable Richard Haaz issued a temporary PFA order that same day.

---

[1] 23 Pa.C.S. §§ 6101-6122.

The Honorable Melissa S. Sterling held a PFA evidentiary hearing on June 18, 2020, and the parties were represented by their respective counsel. At the start of the hearing, Judge Sterling asked the parties if they had attempted to settle the PFA matter. N.T., 6/18/20, at 3-4. The parties explained that they had previously discussed settlement, but could not reach an agreement. *Id.* at 4. Judge Sterling took a brief recess so that the parties could engage in further negotiations. *Id.* at 4-5. The parties did not reach an agreement at that time, and Judge Sterling proceeded with the PFA hearing. *Id.* at 4-5. The parties, who were then also involved in a pending divorce action, testified regarding Wife's claims of abuse. *Id.* at 6-57. Upon completion of the testimony, Judge Sterling encouraged counsel for both parties to again discuss a possible agreement during a recess before she issued a ruling. *Id.* at 66.

The trial court explained:

Upon return from the recess, Wife's counsel informed Judge Sterling that the parties had reached an agreement. Specifically, Wife's counsel stated that "some things are going to be accomplished under the divorce docket, and once those things are accomplished, [Wife] has agreed to withdraw the PFA." It was indicated that Husband's [c]ounsel was "going to create a stipulation containing those terms, the parties are going to circulate it, sign it, it's going to be entered under the divorce action. Once that's done, there will be a [c]ourt [o]rder requiring him to stay away from the house and get counseling."

A handwritten agreement, titled "ORDER", was then signed by the parties, and signed by Judge Sterling, setting forth the following agreed[-]upon terms:

1. The [p]arties will sign an exclusive possession agreement granting [Wife] exclusive possession of [the marital residence]. [Husband] may come to residence to pick up child.

2. [Husband] shall be permitted to come to [Wife's] residence at a mutually agreed upon time to retrieve his personal property with third[-]party present.

**3. [Husband] shall complete a batterers' intervention course.**

4. Parties to communicate via text and email only.

5. **Once a stipulation containing the above terms is entered under divorce docket, [Wife] agrees to withdraw the above-captioned PFA petition and vacate the temporary order.**

\* \* \*

Order, Sterling, J., 6/18/2020 [(agreed order) (emphases added).]

Prior to closing the record, Judge Sterling reiterated: "[t]here's an agreement."

Trial Ct. Op. at 2-3 (footnotes omitted). Judge Sterling then re-listed the PFA hearing for a later date to give the parties time to draft and sign a final stipulation, and to file it on the divorce docket. *Id.* at 3.

On October 21, 2020, prior to the re-listed hearing date, Husband filed a petition for special relief to enforce the agreed order. Husband asserted that he complied with the terms of the agreed order, but that Wife refused to sign the final stipulation and withdraw her PFA petition as required under the agreed order. Specifically, Husband contended that he had provided Wife with proof that he had completed a batterers' intervention course. *Id.* at 3-4.

On October 23, 2020, Wife filed a response denying that Husband "had completed the proper batterers' intervention course in accordance with [her] memory of all of the off-the-record verbal discussions between the parties and

counsel in their settlement negotiations during the recess." ***Id.*** at 4 (footnote omitted). Wife alleged "that the course Husband was supposed to take was to be more therapeutic in nature as opposed to a one-time course." ***Id.*** (footnote omitted).

On October 26, 2020, the parties and their counsel appeared before the trial court for the re-listed PFA hearing. The trial court summarized the hearing as follows:

> During the proceeding, the undersigned went through the agreed order of June 18, 2020, point by point, to determine if there had been compliance with all of its terms. Although Wife repeated her dissatisfaction with the type of batterers['] intervention course that Husband took, ultimately, it was demonstrated that there had been compliance with each point in the agreed order including, but not limited to, Wife having exclusive possession of the marital residence to the exclusion of Husband (as this was not included as part of the temporary PFA order).

***Id.*** at 5 (footnote omitted and formatting altered).

We add that Wife's counsel explained that, prior to his involvement in the case, Wife, acting *pro se*, sent an e-mail to Husband's counsel indicating that the type of batterers' intervention course she contemplated him taking in order to settle the PFA matter. N.T., 10/26/20, at 9; ***see also*** Ex. P-2 (Wife's e-mail correspondence to Husband's counsel, dated June 4, 2020). Wife's counsel explained that the program his client proposed "was through an organization called Menergy here in . . . southeastern Pennsylvania, and it would be an individualized program. So they wouldn't give an estimation of how long it would take because that would be subject to an initial evaluation

- 4 -

that would have to be done." N.T., 10/26/20, at 4; **see also** Ex. P-1 (paperwork for a Menergy batterers' intervention course attached to Wife's June 4, 2020 e-mail). Husband's counsel stated: "I think part of the issue was we didn't agree to that. That's why we came to a [PFA] hearing [on June 18, 2020]." **Id.** at 9. Wife's counsel represented that Wife would not have signed the agreed order if the understanding was that Husband would complete a four-hour class and not the course she desired. **Id.** at 17. At the conclusion of the hearing, the trial court took the matter under advisement.

On October 27, 2020, Wife filed a *pro se* petition for special relief alleging that although the parties had agreed that Husband would complete a specific batterers' intervention course, he instead completed a different program. Pet. for Special Relief, 10/27/20, at 2-4. Wife alternatively argued that because the parties thought they had reached an agreement, but actually did not reach an agreement with respect to the batterers' intervention course, their agreement was not valid and the agreed order should be vacated. **Id.** at 5. Wife also asserted that Husband acted in bad faith during the negotiations. **Id.** at 4-5. Wife requested that the trial court order Husband "to complete the [b]atterer[s'] intervention program he originally agreed to, or, alternatively, vacate the [agreed order] of June 18, 2020, given that [Husband] does not intend to comply with it, and make a ruling on the merits of the case, granting a final protection from abuse order." **Id.** at 6.

By memorandum and order entered on November 5, 2020, the trial court made the following factual findings, in part:

- 5 -

F. [Wife] concedes that [Husband] complied with all of the terms of the agreed order[;] however, she does not agree with the type of "batterers['] intervention course" that [Husband] took.

G. [Husband] completed a four[-]hour "Domestic Violence Class" on June 22, 2020 provided by the North American Learning Institute. The course included a "written knowledge assessment" and is conducted by a certified domestic violence specialist/certified anger management specialist (CDVS-1/CAMS-1). *See* Exhibit "D-1."[fn3]

> [fn3] The course description indicates that the class has a number of different names but all reference the same requirements (*i.e.*[,] "batterers['] intervention program", "family violence", "DV", etc.).

H. [Wife] does not dispute that [Husband] took the course; rather[,] she indicates that she anticipated that [Husband] would be taking a "therapeutic" type course that would include numerous therapy type sessions (**not** a one-time class).

I. The parties['] agreed order does not specify a particular course offered in Montgomery County (or regionally), the course provider, the length, or time period(s) for the course or any particular course criteria.

J. There is no provision in the agreed order that the course to be taken by [Husband] would be "approved" in advance by [Wife].

K. Notably, the agreed order does not indicate that the course would be therapeutic.

L. As acknowledged by [Wife] in her petition, [Husband] completed a psychological evaluation by a licensed professional as part of the pending [child] custody action. The concerns [Wife] raises about [Husband] can be appropriately addressed in the custody case. *See* [Pet., 10/27/20, at ¶¶ 38-42].[fn4]

> [fn4] A two-day hearing on custody is scheduled on November 19 and 20, 2020.

M. Accordingly, the court finds that [Husband's] completion of the course was compliant with the terms of the agreed order.

Trial Ct. Mem. & Order, 11/5/20, at 2-3 (some formatting altered) (emphasis in original). Based on these findings, the trial court granted Husband's petition for special relief and denied Wife's *pro se* petition for special relief. *Id.* at 4. Further, the trial court upheld the terms of the June 18, 2020 agreed order and vacated the May 26, 2020 temporary PFA order. *Id.*

Wife filed a timely *pro se* notice of appeal and entry of appearance as a self-represented party on November 27, 2020.[2] Wife filed a timely court-ordered Pa.R.A.P. 1925(b) statement. On January 26, 2021, the trial court filed a Rule 1925(a) opinion which concluded that Wife's issues were waived but it addressed the merits of her claims.

On appeal, Wife raises the following issues, which we have reordered as follows:

1. Did [Wife] concede that [Husband] complied with all the terms of the agreed order, or did [Wife] aver that [Husband] complied with all terms except one, the specified batterer[s'] intervention program?

---

[2] On January 19, 2021 this Court issued a rule to show cause why this appeal should not be quashed as interlocutory. Order, 1/19/21. Wife filed a *pro se* response on January 20, 2021 baldly asserting that November 5, 2020 order was a final order. Resp. to Rule to Show Cause, 1/20/21, at 1-2. On February 2, 2021, this Court quashed the appeal because "[Wife] failed to address, in the response, the issues of appealability . . . ." Order, 2/2/21, at 2. On the same date, Wife filed a *pro se* motion for reconsideration of the quashal order. In her motion for reconsideration, Wife asserted that the November 5, 2020 order, which vacated the temporary PFA order, effectively denied her PFA petition, but not "on the merits of the [PFA] case." *Id.* at ¶ 8(h)(i). Wife contended that the November 5, 2020 order is a final, appealable order. *Id.* at ¶¶ 8(g)–9. This Court granted Wife's motion on February 23, 2021, and reinstated this appeal.

2. Did the parties have appropriate consideration of terms, to make the agreed order of June 18, 2020 enforceable?

3. Did the trial court err in denying the parties a decision based on the merits of the [PFA] complaint, and instead concluding the matter based on the written order of June 18, 2020?

4. Is it constitutional for the trial court to accept an alternative term on behalf of [Wife] with her expressed opposition and disagreement to the same?

Wife's Brief at 8 (formatting altered).[3]

## Jurisdiction

Initially, we must address the appealability of the November 5, 2020 order. *See K.M.G. v. H.M.W.*, 171 A.3d 839, 841 (Pa. Super. 2017) (explaining that "[t]his Court may examine appealability *sua sponte* because it affects our jurisdiction over the matter" (citation omitted and formatting altered)). Husband argues that this appeal should be quashed because the November 5, 2020 order is not a final order. Husband's Brief at 8-10.

Pennsylvania Rule of Appellate Procedure 341 states that "an appeal may be taken as of right from any final order of a . . . trial court." Pa.R.A.P. 341(a). The rule defines a "final order" as an order that "disposes of all claims and of all parties." Pa.R.A.P. 341(b)(1).

---

[3] Wife raised several claims and sub-issues in her Rule 1925(b) statement that she did not address in her brief, including a claim that Husband's counsel acted unethically during the proceedings below. However, because Wife did not raise those issues in her brief, we conclude that these issues have been abandoned for purposes of appeal. *See Cook v. Cook*, 186 A.3d 1015, 1019 n.1 (Pa. Super. 2018) (holding that issues raised in an appellant's 1925(b) statement but not included in the appellant's brief were abandoned).

Here, the trial court's November 5, 2020 order granted Husband's petition for special relief, denied Wife's petition for special relief, enforced the agreed order, and vacated the temporary PFA order. There are no outstanding claims or parties remaining in Wife's PFA action, and therefore, we conclude that the instant order is a final appealable order. *See* Pa.R.A.P. 341(a)-(b)(1).

**Enforceability of the Agreed Order**

In her first three claims, Wife argues that the trial court erred in enforcing the agreed order and vacating the temporary PFA based on Husband's interpretation of its terms. Wife's Brief at 14-23.

First, Wife claims that Husband did not satisfy one of the express terms of the June 18, 2020 agreed order. *Id.* at 14-16, 20-21. Second, Wife explains that prior to the June 18, 2020 PFA hearing, she sent an email to Husband's counsel with information about the specific batterer intervention program she wanted Husband to complete in exchange for her withdrawing her PFA complaint. *Id.* at 14. Wife asserts that during the negotiations between the parties on June 18, 2020, Wife accepted Husband's proposed terms, including sole possession of the marital residence, "but consistently maintained throughout the negotiations that she would only agree to withdraw her complaint if he completed **the specific** batterer intervention program presented." *Id.* at 14-15 (emphasis in original). Wife claims that Husband agreed to attend the specific course Wife proposed, but that he later denied agreeing to attend a specific course and attended a course different from the

one the parties had agreed upon. *Id.*; *see also id.* at 20-21 (referencing the negotiations between the parties).

Wife alternatively contends that "the [p]arties were jointly unable to meet their contractual obligations of the June 18, 2020 order by agreement, and due to that fact, that order is further rendered void and unenforceable, regardless of the underlying reasons why litigants were not able to comply with that agreement . . . ." *Id.* at 21. Specifically, Wife claims that the trial court should not have enforced the agreed order for several reasons, including: (1) the parties intended the agreed order to be temporary and the parties never reached a final agreement/stipulation; (2) the parties did not reach a meeting of the minds regarding the specific course Husband was to complete; (3) the parties were unable to meet their obligations under the agreed order; and (4) Husband negotiated in bad faith and/or committed fraud because he never intended to complete the specific course Wife proposed. *Id.* at 16-23.

Husband responds that Wife's issues are waived because her Rule 1925(b) statement and brief do not conform to the Rules of Appellate Procedure.[4] Husband's Brief at 11-17. Husband also argues that because he

_____

[4] Husband also contends that Wife's claim that Husband's counsel acted unethically during the proceedings before the trial court is "personal, baseless[,] and insulting" and requests that we sanction Wife. Husband's Brief at 14 n.1 (citing Wife's 1925(b) statement, 12/23/20, at ¶ 6(f)). As stated above, we conclude that Wife has abandoned her claim regarding the conduct of Husband's counsel. Further, Husband has not cited any authority to support his request for sanctions. *See* Husband's Brief at 14 n.1. Therefore, Husband's request for sanctions is denied.

completed a batterers' intervention course as required by the terms of the agreed order, the trial court did not err in finding that he complied with its terms. *Id.* at 18-23.

In PFA matters, this Court reviews a "trial court's legal conclusions for an error of law or an abuse of discretion." *Custer v. Cochran*, 933 A.2d 1050, 1053-54 (Pa. Super. 2007) (*en banc*) (citation omitted). A trial court does not abuse its discretion for a mere error of judgment; rather, an abuse of discretion is found "where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Mescanti v. Mescanti*, 956 A.2d 1017, 1019 (Pa. Super. 2008) (citation omitted).

With respect to settlement agreements, this Court has explained:

The enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [this C]ourt may review the entire record in making its decision. With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record.

\*    \*    \*

Where a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement.

*Step Plan Servs., Inc. v. Koresko*, 12 A.3d 401, 408-09 (Pa. Super. 2010) (citations omitted and formatting altered).

Further, our Supreme Court has stated that

> under the law of contracts, in interpreting an agreement, the court must ascertain the intent of the parties.
>
> In cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

*Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004) (citations omitted).

"Consideration of other factors, such as the knowledge of the parties and the reasonableness of their bargain, is inappropriate." *Simeone v. Simeone*, 581 A.2d 162, 165 (Pa. 1990) (citation omitted). Additionally, "[c]ontracting parties are normally bound by their agreements . . . irrespective of whether the agreements embodied reasonable or good bargains." *Id.* (citations omitted).

Further, "Pennsylvania law states that, once formed, a settlement will not be set aside except upon a clear showing of fraud, duress, or mutual mistake." *Step Plan Servs.*, 12 A.3d at 409 (citation and quotation marks omitted).

This Court has explained:

> Mutual mistake exists . . . only where both parties to a contract are mistaken as to existing facts at the time of execution. Moreover, to obtain reformation of a contract because of mutual mistake, the moving party is required to show the existence of a mutual mistake by evidence that is clear, precise and convincing.

*Felix v. Giuseppe Kitchens & Baths, Inc.*, 848 A.2d 943, 948 (Pa. Super. 2004) (citations omitted and formatting altered).

> To prove fraud, a plaintiff must demonstrate by clear and convincing evidence: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Blumenstock v. Gibson*, 811 A.2d 1029, 1034 (Pa. Super. 2002) (citation omitted and formatting altered).

It is well established that "a party who consents to, or acquiesces in, a judgment or order cannot appeal therefrom." *Brown v. Commonwealth, Dep't of Health*, 434 A.2d 1179, 1181 (Pa. 1981); *see also Karkaria v. Karkaria*, 592 A.2d 64, 71 (Pa. Super. 1991) (stating that "[a] party who has acquiesced in an order or judgment will not later be heard to challenge it" (citation omitted)). Further, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

Instantly, the trial court concluded that Wife waived her issues regarding the batterers' intervention course in the agreed order because she did not make a contemporaneous objection before the trial court. Trial Ct. Op. at 8. Specifically, the trial court explained:

- 13 -

Wife has waived her issue on appeal because she did not object to the language contained in the [a]greed [o]rder at the time she signed it and it was made an [o]rder of the [c]ourt.

As noted in the November 4, 2020 [o]rder . . . the [a]greed [o]rder of June 18, 2020 did not specify a particular course offered in Montgomery County (or regionally), the course provider, the length, or time period(s) for the course or any particular course criteria. There is no provision in the [a]greed [o]rder that the course to be taken by Husband would be "approved" in advance by Wife. Finally, the [a]greed [o]rder does not indicate that the course would be therapeutic.

Notably, Wife does not dispute that Husband took a batterers['] intervention course, rather that he did not take the type of batterers['] intervention course that **she wanted him to take** . . . .

In point of fact, Husband completed a four hour "Domestic Violence Class" on June 22, 2020 provided by the North American Learning Institute.

∗    ∗    ∗

It was not until after Husband had completed the course, and sought enforcement of the [a]greed [o]rder of June 18, 2020, that Wife raised issue to the type of course that she wanted Husband to complete.

Thus . . . Wife raises an issue with her interpretation of a specific point in the [a]greed [o]rder only **after** she signed it and **after** it was already made an [o]rder of the [c]ourt. Both Wife and her counsel clearly had every opportunity to add or make any clarifications to its terms at the time the [a]greed [o]rder was negotiated, before it was signed, and before it became an [o]rder of the [c]ourt. Accordingly, Wife's issues as it relates to what she thought she agreed to in the [a]greed [o]rder are waived.

*Id.* at 9-10 (footnotes omitted) (emphases in original)

The trial court also concluded that Wife waived her challenge to the terms of her agreement because she acquiesced to the terms of the agreed order and, therefore, she could not later challenge the agreement absent a

showing of fraud or mutual mistake. *Id.* at 10-11 (citing, *inter alia*, **Karkaria**, 592 A.2d at 71). Further, the trial court stated that that Wife "did not make specific averments of fraud or mutual mistake, either in her pleadings or at the October 26, 2020" hearing, and that she has raised the issue of fraud for the first time on appeal. *Id.* at 12.

Based on our review of the record, we agree with the trial court that Wife waived her challenge to the interpretation of the terms in the agreed order by consenting to the entry of that order. *See Brown*, 434 A.2d at 1181. In any event, we discern no error by the trial court in concluding that the agreed order did not require Husband to take a particular batterers' intervention course or give Wife the power to approve the course Husband would take. *See* Trial Ct. Mem. & Order at 2-3. Therefore, Wife is not entitled to relief on this claim. *See Step Plan Servs.*, 12 A.3d at 408; *Custer*, 933 A.2d at 1053-54.

However, we disagree with the trial court's conclusion that Wife waived her claim regarding fraud and/or mutual mistake. Our review of the record indicates that in her *pro se* petition for special relief, Wife alleged that there was a mutual mistake regarding the batterers' intervention course and that, alternatively, Husband committed fraud during the settlement negotiations. *See* Pet. for Special Relief, 10/27/20, at 4-5. Although Wife did not use the terms "mutual mistake" or "fraud" in her petition, her allegations implicated those grounds. *See Rich v. Acrivos*, 815 A.2d 1106, 1108 (Pa. Super. 2003) (stating that we may liberally construe filings by *pro se* parties). However,

because Wife did not prove her allegations of fraud or mutual mistake by clear and convincing evidence, we nonetheless conclude that the trial court did not err in enforcing the agreed order. **See Felix**, 848 A.2d at 948; **Blumenstock**, 811 A.2d at 1034.

Therefore, because we find no abuse of discretion or error of law in the trial court's decision to enforce the agreed order and vacate the temporary PFA order, Wife is not entitled to relief on her first three issues. **See Step Plan Servs.**, 12 A.3d at 408; **Custer**, 933 A.2d at 1053-54.

### Due Process Claim

In her final issue, Wife argues that the trial court violated her due process rights. Specifically, Wife argues:

> The Fifth and Fourteenth Amendments of the Constitution of the United States protect [Wife's] civil rights to liberty and due process.
>
> However, by accepting different terms on the [Wife's] behalf the trial court has deprived [Wife] of her individual freedom to enter specific contract terms by consent.
>
> Instead, the trial court has forced [Wife] to accept an alternative contract term, that she was not only never in agreement with, but expressed adamant opposition to, while also vacating protections that should be afforded to her, without complying with her legal right to due process (ruling on the complaint).

Wife's Brief at 23-24 (formatting altered). Essentially, Wife claims that the trial court violated her due process rights by granting Husband's petition for

special relief to enforce the agreed order, and vacating the temporary PFA order without holding a hearing on the merits of her PFA petition.[5] *Id.*

"A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." **S.T. v. R.W.**, 192 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted and formatting altered). It is well settled that "[p]rocedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." **Garr v. Peters**, 773 A.2d 183, 191 (Pa. Super. 2001) (citation and quotation marks omitted). "Parties may waive rights, even due process rights and other rights of constitutional magnitude." **Tecce v. Hally**, 106 A.3d 728, 732 (Pa. Super. 2014) (citation omitted); *see also* Pa.R.A.P. 302(a); **Morgan v. Morgan**, 117 A.3d 757, 762 (Pa. Super. 2015) (explaining that "appellants may not raise issues for the first time in a Rule 1925(b) statement" (citation omitted)).

Here, the trial court concluded that Wife waived her due process claims because she raised them for the first time on appeal. **See** Trial Ct. Op. at 14. Nevertheless, the trial court addressed the merits of this claim, explaining that

> Wife was accorded full due process rights throughout all of the proceedings conducted by the trial court in this matter. First, a temporary PFA order was entered by a Judge in an *ex parte* proceeding on the same day that Wife filed her [PFA] petition.

---

[5] To the extent Wife is arguing that the trial court erred in rejecting her interpretation of the terms of the agreed order, we have already addressed that claim.

Second, Wife had a full hearing on the merits of her petition before a Judge on June 18, 2020 in which both parties were subjected to direct and cross-examination. Thereafter, yet a third proceeding was conducted before the undersigned on October 26, 2020 (on . . . Husband's petition for special relief to enforce settlement agreement). During both the June 18th and October 26th proceedings, Wife was represented by legal counsel. At no time did her counsel raise a failure to afford Wife due process. Lastly, although under no requirement to do so, the undersigned considered the petition Wife filed a *pro se*, and post hearing, on October 27, 2020. There is absolutely nothing in the record, or even set forth in Wife's concise statement for that matter, which demonstrates that she was denied access to due process by this court.

*Id.* at 14-15 (footnote omitted and some formatting altered).

We agree with the trial court that Wife waived her due process claims because she raised them for the first time on appeal. *See Morgan*, 117 A.3d at 762; *Tecce*, 106 A.3d at 732; *see also* Pa.R.A.P. 302(a). Even if Wife properly preserved her due process claim, we agree with the trial court's conclusion that she is not entitled to relief. *See S.T.*, 192 A.3d at 1160. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/01/2021